IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VINCENT LANE,**

      **Plaintiff,**

   v.                                  **Civil Action 2:19-cv-1793**
                                            **Judge Michael H. Watson**
                                            **Magistrate Judge Kimberly A. Jolson**

**C/O BEAVERS, et al.,**

      **Defendants.**

## REPORT AND RECOMMENDATION AND ORDER

Plaintiff, a pro se prisoner, has filed a number of Motions that are presently before the Undersigned for consideration. His most substantive Motion is a Motion for Order of Protection, (Doc. 6), which the Court is construing as a Motion for a Preliminary Injunction. He has since filed 19 additional motions: five Motions that seem to seek immediate injunctive relief (Docs. 14, 20, 30, 31, 34); eight Motions for certain discovery (16, 17, 18, 21, 22, 23, 24, 34); four Motions to file new evidence (Docs. 15, 33, 36, 37); a Motion for a private investigator (Doc. 19); and a Motion to appoint counsel (Doc. 29).

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motions for Injunctive Relief (Docs. 6, 14, 20, 30, 31, 34) be **DENIED**. Also, for the reasons explained below, Plaintiff's other Motions, (Docs. 15, 16, 17, 18, 19, 21, 22, 23, 24, 29 33, 34, 36, 37), are **DENIED without prejudice**.

    I.      **BACKGROUND**

Plaintiff, an inmate at Ross Correctional Institution ("RCI"), alleges that he and Defendant Correctional Officer ("C/O") Beavers engaged in sexual acts "on a regular basis" in exchange for

drugs and other contraband. (Doc. 5 at 3). According to his Complaint, on October 24, 2018, Defendant Beavers "ask me to allow him to do (oral) sex on me and he would bring me into the prison contraband items[.]" (*Id*). At this point, Plaintiff alleges that he "no longer wanted to participate with him because he requested doing oral sex and repeatedly calling by the name of (big) daddy." (*Id*. at 3–4). Plaintiff immediately lodged an internal grievance against Defendant Beavers for "his constant romantic name calling, and his demands of sexual favors." (*Id*. at 4).

On October 25, 2018, Defendant Sexton called Plaintiff to his office to discuss these allegations. (*Id*., Doc. 26-1, ¶ 12). The parties each have their own version of what transpired at this meeting. According to Plaintiff, after confirming that he had filed a complaint against Defendant Beavers, Defendant Sexton ordered Plaintiff handcuffed and moved to segregation. (Doc. 5 at 4). But according to Defendant Sexton, when asked if he had any further information about his allegations against Defendant Beavers, Plaintiff "immediately became verbally aggressive, rude, and disrespectful," and as a result, "was placed in restrictive housing for his actions." (Doc. 26-1, ¶ 12). Consequently, Defendant Sexton filed a conduct report against Plaintiff. (Doc. 35-6 at 8). Plaintiff claims that this report is inaccurate and was filed in retaliation. (Doc. 5 at 4).

The next day, on October 26, 2018, Plaintiff filed a Prison Rape Elimination Act ("PREA") complaint against Defendant Beavers. (Doc. 26-2). RCI officials investigated Plaintiff's complaint and questioned staff members. (*Id*. at 1). Plaintiff, however, "failed to further cooperate with the investigation stating that he would not be further questioned without an Attorney present throughout the remainder of the investigation" and also "refused to be seen, evaluated, or counseled" by mental health or victim support services. (*Id*.).

While the investigation was ongoing, Plaintiff also filed an internal complaint against Defendant C/O Farmer for retaliation. Plaintiff alleges that Defendant Farmer told him to "drop" his complaint against Defendant Beavers and cursed at him because "he filed a PREA on my best friend."[1] (Doc. 5 at 4–5). According to the PREA report, RCI officials questioned Defendant Farmer about Plaintiff's allegations and explained to him the PREA policy regarding retaliation. (Doc. 26-2 at 1). "Officer Farmer assured [the investigator] that he understood and [the investigator] did not, and has not heard anything further pertaining to Officer Farmer from inmate Lane." (*Id*.).

On March 18, 2019, RCI investigators closed the PREA investigation and concluded that Plaintiff's claims were "unfounded due to the lack of evidence and the continuous lack of cooperation involving the case." (*Id*.). The report concluded:

> **Conclusion**
>
> Inmate Lane was transferred to RCI due to being charged for making weapons out of an issued knee brace. Inmate lane has been requesting and doing anything he can to be transferred from RCI to any Institution in the north. He is not suitable for transfer due to his Rules Infraction Board history (RIB).
>
> Just recently while performing unit rounds, inmate Lane assured Mr. Diehl that he would continue filing complaints until he is transferred back to the north, closer to home.

(*Id*. at 2).

On June 17, 2019, Plaintiff filed his Complaint in this Court against Defendants Beavers, Farmer, and Sexton. (Doc. 5). He does not seek damages but seeks the following injunctive relief:

- for the Court to "grant [him] a federal order of protection against both c/o Farmer and Beavers"; and

---

[1] The State, relying on staff rosters, (Docs. 3, 4), and Defendant Farmer's sworn affidavit, (Doc. 35-2), asserts that, Defendant Farmer was working in the chapel on one of the dates in question, and therefore could not have interacted with Plaintiff.

- that the Court "not allow for [him] to be placed in segregation by this prison for any reason that's directly due to the PREA [Prison Rape Elimination Act] that [he] [] filed on C/O Beavers, the informal complaints and grievances that [he] [] filed on staff members Farmer and Sexton."

(*Id*. at 6).

The day after Plaintiff filed his Complaint, he filed a Motion for Order of Protection and Protection Against Being Placed in Segregation by Plaintiff Vincent Lane. (Doc. 6). Because Plaintiff's Motion seeks immediate injunctive relief during the pendency of his lawsuit, the Court construes it as a Motion for a Preliminary Injunction.

In his Motion, Plaintiff seeks slightly wider injunctive relief than in his Complaint. He requests that the Court: (1) "grant an order of protection against C/O Beavers, C/O Farmer and Lieutenant Sexton"; (2) enjoin RCI officials from placing Plaintiff in segregation; and (3) prevent him from being in "clear view of other inmates at all times." (*Id*.).

In the weeks since filing his Motion, Plaintiff has filed 19 additional motions. (Docs. 14–24, 29–34, 36–37). On June 21, 2019, the Court ordered Defendants to respond to Plaintiff's Motion for a Preliminary Injunction within ten days. (Doc. 7). The Interested Party State of Ohio ("the State") timely moved to file its opposition brief and supporting exhibits under seal, which the Court denied without prejudice. (Doc. 12). On July 15, 2019, the Court directed Defendants to file their response to Plaintiff's Motion for Order of Protection and any supporting exhibits on the public docket within two days, (Doc. 25), which the State did, (Doc. 26).

After reviewing the State's opposition brief, however, the Court determined that, given Plaintiff's alarming factual allegations, it required more information to comprehensively address the need for immediate injunctive relief. (Doc. 28). Accordingly, the Court directed the State to file a supplemental memorandum directly addressing Plaintiff's allegations of sexual harassment and retaliation and to respond to Plaintiff's other pending Motions. (*Id*.). The State filed its

supplemental brief and supporting exhibits on June 24, 2019. (Doc. 35). This matter is now fully briefed and ripe for resolution.

**II.    STANDARD**

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *ACLU v. McCreary Cty.*, 354 F.3d 438, 444 (6th Cir. 2003) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). And, in cases like this one, "where a prison inmate seeks an order enjoining state prison officials, the Court is required to proceed with the utmost care and must be cognizant of the unique nature of the prison setting." *Roden v. Floyd*, No. 2:16-CV-11208, 2018 WL 6816162, at *2–3 (E.D. Mich. Nov. 13, 2018), *report and recommendation adopted*, No. 16-11208, 2018 WL 6815620 (E.D. Mich. Dec. 27, 2018).

When considering a motion for preliminary injunction, a district court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

Under the first factor, to establish a strong likelihood of success on the merits, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This requires, "at a minimum," a movant to show "serious questions going to the merits." *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (citation and internal quotation marks omitted). The first factor is often determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth,* 583

> F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. *See Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). Failure to do so is reversible error. *See id.; Sandison v. Michigan High School Athletic Ass'n,* 64 F.3d 1026, 1037 (6th Cir. 1995).

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2–02–178, 2002 WL 3140935, at *3 (S.D. Ohio August 12, 2002) (denying motion for injunctive relief after evaluation only of chance of success on the merits factor); *see also City of Pontiac Retired Employees Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

## III. DISCUSSION

### A. Plaintiff's Motion for Preliminary Injunction (Doc. 6)

Plaintiff seeks "an order of Protection" from Defendants—asking that the Court enjoin RCI from moving him to segregation but at the same time also ensure "that he may not be in clear view of other inmates at all times." (*Id*. at 1). As a threshold matter, to the extent that Plaintiff is asking the Court to enjoin RCI officials from sexually harassing him or retaliating against him, "a court order enjoining future criminal acts, such as sexual assault, or future intentional violations of Plaintiff's constitutional rights imposes no additional legal duty on prison officials that they were not already subject to." *Parker v. Horton*, No. 2:18-CV-80, 2019 WL 1129583, at *1–2 (W.D. Mich. Mar. 12, 2019) (denying inmate's request for an order enjoining defendants from retaliating against him and sexually and physically assaulting him) (citing *Farmer v. Brennan*, 515 U.S. 825, 834 (1994)).

Moreover, a careful balancing of the preliminary injunction factors weighs against granting Plaintiff's Motion.

### i. Likelihood of Success on the Merits

First, Plaintiff must satisfy his "initial burden" by showing a strong or substantial likelihood of success on the merits of his claims. *NAACP v. City of Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).

#### a. *Sexual Assault Claims Against Defendant Beavers*

Applying a liberal reading to Plaintiff's Complaint, it appears that he is claiming that Defendant Beavers violated his Eighth Amendment rights by sexually assaulting him and calling him sexually suggestive names, like "Big Daddy."

At this juncture, it is impossible for the Court to determine whether there is a strong likelihood that Plaintiff's claims will succeed on the merits. The Court is presently faced with conflicting narratives of the events at issue. For example, Plaintiff alleges that he attempted to end his relationship with Defendant Beavers on October 24, 2018, at which point he filed a complaint against Defendant Beavers. (Doc. 5 at 3–4). But the State, relying on shift rosters, (Doc. 35-3), and Defendant Beavers' sworn affidavit, (Doc. 35-1), maintains that Defendant Beavers was not even at work that day. It seems, therefore, that Plaintiff's likelihood of success on his claims is roughly equal to Defendants' likelihood. *See, e.g.*, *King v. Hoskins*, No. 3:18-CV-891, 2018 WL 4776097, at *2–4 (M.D. Tenn. Oct. 3, 2018) (concluding that plaintiff had not shown likelihood of success on merits because, at that point in the litigation, his "claims of physical and sexual assault will come down the credibility of Plaintiff and the alleged perpetrators as to what happened."). Given the parties' conflicting factual allegations, Plaintiff cannot show a strong likelihood of success on the merits.

### b. *Retaliation Claim Against Defendants Sexton and Farmer*

Plaintiff also alleges that Defendants Sexton and Farmer retaliated against him for filing a complaint against Defendant Beavers.

To establish likelihood of success on the merits of a claim for First Amendment retaliation, Plaintiff must prove that: (1) he engaged in activities protected by the Constitution or statute; (2) Defendants took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was taken at least in part because of the exercise of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff cannot make it past the first element. "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citation omitted). But "[t]his right is protected, however, only if the grievances are not frivolous." *Id*. (citation omitted). In other words, Plaintiff's sexual assault and retaliation claims rise and fall together. *See, e.g.*, *id*. (finding that plaintiff's "pursuit of legal claims against [prison] officials in the instant case and in the previous case was protected conduct only to the extent that the underlying claims had merit.").

As explained, given the disputed facts in this case, the Court cannot determine the veracity of Plaintiff's sexual assault claim. And until that point, the Court cannot opine on the merits of Plaintiff's retaliation claim. *See, e.g.*, *id*. (holding that plaintiff could not allege specific retaliation by prison officials for pursuing claims that were dismissed as frivolous). As a result, Plaintiff cannot show a strong likelihood of success on the merits of his retaliation claim.

A plaintiff's failure to show a likelihood of success on the merits is often outcome-determinative. *See City of Pontiac Retired Employees Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of

success on the merits often will be the determinative factor.") But given the nature of Plaintiff's allegations, the Court will briefly consider the remaining preliminary injunction factors.

### ii. Irreparable Harm

"The moving party must show that irreparable harm is both certain and immediate, rather than speculative or theoretical." *Kensu v. Borgerding*, No. 16-13505, 2018 WL 4854677, at *4 (E.D. Mich. July 3, 2018) (citation and quotation omitted), *report and recommendation adopted*, No. CV 16-13505, 2018 WL 3387247 (E.D. Mich. July 12, 2018). Plaintiff has not met his burden.

Defendant Beavers: In his Motion for a preliminary injunction, Plaintiff states that he has "high fears of being molested again by C/O Beavers." (Doc. 6 at 2). But in his affidavit, Defendant Beavers asserts that after the "no-inmate contact" order was revoked following the PREA investigation, he "ha[s] not had any form of contact with inmate Lane" and "ha[s] never directly overseen the housing unit inmate Lane is assigned to." (Doc. 35-1, ¶ 8). Plaintiff alleges that this is not true, and that Defendant Beavers does have access to him. (*See, e.g.*, Doc. 14 (alleging that Defendant Beavers "has access" to Defendant's food trays and mail and has "the opportunity of viewing [him] [in] stages of undress shower, bathroom, etc.")). But despite this "access," Plaintiff does not claim that Defendant Beavers has physically harmed him during the pendency of this lawsuit. Nor has he so alleged in his other 19 Motions.

Therefore, while Plaintiff's allegations are alarming, the Court cannot conclude, on the facts available, that Plaintiff is likely to suffer irreparable harm without immediate injunctive relief. *See, e.g.*, *King*, 2018 WL 4776097, at *3 (despite plaintiff's "fear that he may be attacked again by the same perpetrators," he did "not allege that any further attacks or threats of attacks have occurred," and as a result, the court was unable to find that plaintiff was likely to suffer irreparable harm).

9

Defendants Sexton and Farmer: In his Motion for a Preliminary Injunction, Plaintiff alleges that Defendant Sexton "has shown that he's willing to cover-up wrong actions by his staff at any and all cost. . ." but provides no support for this allegation. (Doc. 6 at 2). His claims regarding Defendant Farmer are equally vague, stating that Defendant Farmer "will go to great lengths in order to have harm done to the Plaintiff as has been the case with C/O Farmer seeking the help of staff and inmates to aid him in his quest to do harm to the Plaintiff." (Doc. 6 at 1–2). Defendant Farmer swears that, at least since the commencement of this lawsuit, he has had zero interaction with Plaintiff. (Doc. 35-2, ¶ 8).

Based on the current record, the likelihood of irreparable harm is simply too remote. And, "a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Johnson v. Payton, No. 13-11437*, 2013 WL 1843979, at *3–4 (E.D. Mich. Apr. 10, 2013), *report and recommendation adopted*, No. 13-CV-11437, 2013 WL 1843971 (E.D. Mich. May 1, 2013).

### iii. Substantial Harm to Others and Public Interest

Turning briefly to the third and fourth factors, while it appears that no third parties would be harmed if the preliminary injunction were issued, it also does not appear that any public interest would be served. To the contrary, enjoining prison officials from moving Plaintiff to segregation and keeping him out of plain view from other inmates would undoubtedly "remove from prison officials the deference that they are generally afforded in the administration and control of the prison." *King*, 2018 WL 4776097 at *3 (citing *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988)).

At base, "[a] preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *McCreary Cty.*, 354 F.3d at

444 (quoting *Hanson Trust PLC*, 781 F.2d at 273). Moreover, in a case like this one, where a prisoner seeks an order enjoining state prison officials, the Court must "proceed with the utmost care and must be cognizant of the unique nature of the prison setting." *Roden*, 2018 WL 681612, at *3. Plaintiff has not satisfied his burden to show that such an extraordinary remedy is appropriate. Accordingly, the Court will not grant a preliminary injunction here.

### B. Plaintiff's Other Pending Motions (Docs. 14, 15–24, 29–34, 36–37)

Turning now to Plaintiff's 19 other pending Motions, the Court first addresses Plaintiff's Motions that seem to be seeking emergency injunctive relief. (Docs. 14, 20, 30, 31, 34). As with his first Motion for a Preliminary Injunction, these subsequent Motions ask the Court to "protect" Plaintiff from Defendants. (*See* Doc. 14 (seeking an order of protection from Defendants); Doc. 20 (seeking the Court's "protection against the three defendants as they collectively hold much sway and power that can convince other inmates or staff, to do harm towards the Plaintiff"); Doc. 30 (seeking the Court "to stop the ceaselessly and needless stalking and intimidation that is being displayed" by Defendants); Doc. 31 (seeking protection from the Court); Doc. 34 (asking the Court "to Demand his Protection in status be granted"). These Motions include additional allegations against Defendants—including but not limited to, allegations that Defendant Sexton "and his henchmen" "beat" Plaintiff on June 16, 2019, an allegation that Defendant Farmer "has openly offered money, drugs and favors to (gang) members and individuals alike to do bodily harm towards this Plaintiff," (Doc. 20 at 2), and an allegation that Defendant Sexton "used other staff members to carry out a beating on the Plaintiff, along with planting drugs and taking what is known as (trophy) pictures of plaintiff in dazed state.")).

These new allegations are wholly unsupported, and Plaintiff relies on only conclusory and vague assertions. (*See, e.g.*, *id*. ("Plaintiff fears that Defendant S. Sexton will kill him and have

11

help from his co-workers in covering this act up.")). These Motions do not survive the stringent preliminary injunction standard, and in any event, they seek identical injunctive relief that the Court addresses in this Recommendation. *See, e.g.*, *Kensu*, 2018 WL 4854677, at *3 (E.D. Mich. July 3, 2018), *report and recommendation adopted*, No. CV 16-13505, 2018 WL 3387247 (E.D. Mich. July 12, 2018) (denying preliminary injunction motion, explaining that "[n]otwithstanding these theories for [causation], plaintiff provides no evidence, either by way of declaration, affidavit, testimony, documents or otherwise," to support retaliation claims). Accordingly, the Court **RECOMMENDS** that these Motions for injunctive relief be **DENIED**. (Docs. 14, 20, 30, 31, 34).

Second, Plaintiff has filed Motions for discovery. (Docs. 16, 17, 18, 21, 22, 23, 24, 34). These Motions are improper under this Court's local rules and the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5(d)(1); S.D. Ohio Civ. R. 37.2. "Objections, motions, applications, and requests relating to discovery shall not be filed in this Court . . . unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences." S.D. Ohio Civ. R. 37.2. "Pro se litigants are not exempt from the procedural rules in civil litigation." *Mitchell v. Clayton*, No. 13-11620, 2015 WL 71784, at *2 (E.D. Mich. Jan. 6, 2015); *see, e.g.*, *Perry v. Cousins*, No. 15-CV-13930, 2016 WL 5941831, at *2 (E.D. Mich. Oct. 13, 2016) (denying inmate's motion for discovery, explaining that "his discovery requests must first be directed to Defendant, not filed with the Court."). Because there is no evidence that Plaintiff first attempted to exhaust all extrajudicial means before filing these Motions, Plaintiff's Motions for discovery, (Docs. 16, 17, 18, 21, 22, 23, 24, 34), are **DENIED without prejudice**.

Third, Plaintiff has filed a number of Motions to add new evidence. (Docs. 15, 33, 36, 37). These Motions are improper because they attempt to add serious new allegations against

Defendants. (*See, e.g.*, Doc. 15 (alleging that Defendant Beavers tampered with Plaintiff's dinner); Doc. 36 (providing a list of non-party correctional officers, whom he "fears," alleging that they are each likely retaliate against him and alleging that they have filed false conduct reports on inmates and have "planted drugs on inmates")). If Plaintiff seeks to bring these new claims and/or add new Defendants, he may attempt to do so by seeking leave from the Court to amend his Complaint. *See* Fed. R. Civ. P. 15. Plaintiff's Motions to add new evidence, (Docs. 15, 33, 36, 37), are therefore **DENIED without prejudice**.

Fourth, Plaintiff has filed a Motion for a Private Investigator, (Doc. 19), in which he asks the Court to provide him with funds for a private detective "to get statements (sworn), inmates (numbers), statement from staff members, camera footage, staff records of the defendants [sic] criminal history, mental records, prior documentation of written conduct reports, staff discipline, etc." (*Id.* at 2). "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007). Besides, Plaintiff can request much of this information using traditional discovery means. Plaintiff's Motion for a Private Investigator, (Doc. 19), is **DENIED without prejudice**.

Fifth, Plaintiff has filed a Motion for Attorney Fee (Funds), or Pro Bono Assistant, (Doc. 29), which the Court construes as a Motion to Appoint Counsel. Because the action has not yet progressed to the point that the Court is able to evaluate the merits of Plaintiff's claim, the Court will not appoint counsel at this time. *See Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985) (en banc) ("[I]n considering an application for appointment of counsel, district courts should consider plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim appears to have any merit."). Accordingly, Plaintiff's Motion to appoint counsel, (Doc. 29), is **DENIED without prejudice**.

## IV. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: August 2, 2019        /s/ Kimberly A. Jolson
                            KIMBERLY A. JOLSON
                            UNITED STATES MAGISTRATE JUDGE